UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN HERNANDEZ,<br><br>Defendant. | No.  1:18-cr-00152-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 42) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), brought on behalf of defendant Martin Hernandez.  (Doc. No. 42.)  That motion is based in part on the purported risks posed to defendant Hernandez by the ongoing coronavirus ("COVID-19") pandemic.  For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On September 30, 2019, defendant Hernandez entered his plea of guilty to having committed wire fraud in violation of 18 U.S.C. § 1343.  (Doc. Nos. 23, 36.)  Specifically, defendant defrauded the Social Security Administration ("SSA") over a six year period by utilizing his position as an SSA claims specialist to falsify payments to SSA beneficiaries whom he had recruited to receive fraudulent benefit payments and then pay him substantial amounts of cash from those benefit overpayments.  (Doc. No. 27 at 4–5.)  Thereafter, on January 15, 2020, defendant Hernandez was sentenced to a "split sentence" term of 18 months in the custody of the

1   U.S. Bureau of Prisons ("BOP"), with "9 months to be served in custody and 9 months to be
2   served on electronically monitored home confinement," followed by a 36-month term of
3   supervised release.
4       Defendant is currently incarcerated at the Federal Correctional Institution, Lompoc ("FCI
5   Lompoc"). (Doc. No. 42 at 1.) Defendant began serving his sentence on March 11, 2020, and his
6   term of home confinement will commence after he is released from FCI Lompoc on November 6,
7   2020. (Doc. Nos. 42 at 1, 52 at 2.) According to defendant, he has served approximately 66% of
8   his 9-month custodial sentence. (Doc. No. 42 at 1.) According to the government, accounting for
9   good time credits, defendant's projected release date on his 18-month sentence is June 20, 2021,
10  and thus defendant "has served about 5 months (31.1%) of his 18-month sentence." (Doc. No. 52
11  at 2.)
12      On August 26, 2020, defendant filed the pending motion for compassionate release
13  pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 42.) On September 9, 2020, the government
14  requested an extension of time to file its opposition. (Doc. No. 46.) The next day, defendant
15  opposed the government's request for an extension of time (Doc. No. 47), and the government
16  reiterated its request in a reply (Doc. No. 48). After receiving a brief extension of time from the
17  court, the government filed its opposition to the pending motion on September 17, 2020. (Doc.
18  No. 52.) On September 22, 2020, defendant filed his reply thereto. (Doc. No. 56.)

19                                          **LEGAL STANDARD**

20      A court generally "may not modify a term of imprisonment once it has been imposed."
21  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment
22  of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may
23  not be modified by a district court except in limited circumstances."). Those limited
24  circumstances include compassionate release in extraordinary cases. *See United States v. Holden*,
25  3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the
26  First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the
27  BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may
28  now bring their own motions for compassionate release in the district court. 18 U.S.C.

§ 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a

---

where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 42 at 3; 52 at 4.) The court will accept the government's concession and below will turn to the merits of defendant's motion.[4]

---

[4] It appears to the court that defendant Hernandez requested his compassionate release on or about April 15, 2020, and his request was denied by the warden on May 21, 2020, well prior to defendant's filing of his motion with this court. Nonetheless, neither party addresses whether defendant Hernandez was required to administratively appeal the Warden's denial of his request if that denial was issued more than thirty days after the request was lodged. *See* fn. 1, above. Because a failure to exhaust administrative remedies is an affirmative defense, the court will adopt the government's concession of exhaustion.

5

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL

2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

Defendant Hernandez argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist because his "asthma and autonomic dysreflexia make him especially vulnerable to COVID-19 and heighten his chances of lasting health problems or even death if he contracts the virus." (Doc. No. 42 at 2.) In particular, defendant contends that autonomic dysreflexia can lead to a spike in hypertension, and when considered in combination with his asthma, his underlying health conditions make him especially vulnerable to suffering severe illness from COVID-19 according to guidance from the Centers for Disease Control and Prevention ("CDC"). (*Id.* at 5) (citing *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated September 11, 2020)). Defendant explains that he did not inform medical staff at FCI Lompoc about his asthma when he arrived at that institution because it was in remission, but he has since developed severe breathing problems and his asthma is now so severe that he has to use twice the recommended amount of his inhaler

---

[5] Here, however, because defendant Hernandez is only 46 years old (Doc. No. 52 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

7

for the medication to be effective. (*Id.* at 4, 5.) Defendant also informed his counsel on August 26, 2020 that he had been without an inhaler for four days, and that when he requests one from medical staff, "he is told they are low and to come back the next day." (*Id.* at 4.)

In addition, defendant is a paraplegic and uses a wheelchair, and "[b]ecause of the self-care he must perform daily, being in custody with his medical issues in this COVID-19 environment make this a dangerous situation for him." (*Id.*) Defendant further asserts that "his chances of becoming infected in prison are greatly increased compared to being in the community where he would be able to practice social distancing and better care for himself." (*Id.* at 5.) According to defendant, "[t]he difference between January 15, 2020 when Mr. Hernandez was sentenced and September 22, 2020 is COVID-19," and as a result, "[h]is sentence has resulted in punishment harsher and more deadly than any that could have been anticipated." (Doc. No. 56 at 3.)

In its opposition, the government contends that defendant has failed to carry his burden to establish his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason, and defendant suffers from no CDC-recognized risk factors. (Doc. No. 52 at 7, 8.) In particular, the government argues that although defendant's autonomic dysreflexia "may place him at risk for developing hypertension—a COVID-19 risk factor—being at risk for developing a risk factor is not the same as having a risk factor." (*Id.* at 9.) With respect to defendant's autonomic dysreflexia, the government notes that the presentence report in defendant Hernandez's case indicates that he "must manually stimulate bowel movements daily to prevent the onset of his Autonomic Dysreflexia," and the BOP has prescribed defendant suppositories to facilitate bowel movements. (*Id.*) The government also disputes the severity of defendant's asthma, focusing on the fact that defendant's BOP medical records do not reflect that he has been "diagnosed with moderate to severe asthma." (*Id.* at 8–9.) According to the government, asthma was mentioned for the first time in defendant's medical records on June 15, 2020, when his history of asthma was noted at the time of his dental health screening. (*Id.* at 3.) Then, defendant later complained of asthma during two visits to the medical clinic at FCI Lompoc on July 13 and

1   July 28, 2020, specifically complaining that the cleaning chemicals from food service near where
2   he sleeps had been triggering his asthma and affecting his breathing.  (*Id.*)  The notes from those
3   medical visits also reflect that defendant explained that he had not asked for an inhaler when he
4   arrived at FCI Lompoc because his asthma "was under control for a while."  (*Id.*; Doc. No. 55 at
5   3.)  Defendant was prescribed an albuterol inhaler on July 13, 2020, and after following up on
6   July 28, 2020 to complain that he was still experiencing breathing difficulties despite using the
7   inhaler more often than recommended, he was then prescribed a steroid inhaler as well.  (Doc.
8   Nos. 52 at 3–4, 55 at 3.)  Nevertheless, the government emphasizes that the medical records show
9   a diagnosis of "Unspecific Asthma, Uncomplicated," and that the CDC recognizes only moderate
10  to severe asthma as a risk factor for becoming severely ill if one contracts the COVID-19 virus.
11  (Doc. No. 52 at 8–9.)  Thus, the government argues that because defendant "does not have a
12  diagnosis of moderate to severe asthma, and given that Autonomic Dysreflexia is not a CDC risk
13  factor, [defendant] Hernandez has not established that he is entitled to the rare and extraordinary
14  relief contemplated by his motion."  (*Id.* at 9.)

15  In his reply, defendant contends that his asthma is at least moderate, if not severe, and thus
16  he does have a CDC-recognized risk factor medical condition.  (Doc. No. 56 at 3.)  Defendant
17  also argues that the government's conclusion to the contrary is flawed because "[i]t is unknown
18  how the medical system in prison determines what level of asthma an incarcerated person has,"
19  and "how often the medical records are updated."  (*Id.* at 2.)  Defendant Hernandez urges that
20  "[i]t cannot be concluded that a report from July 8, 2020 has the correct information about the
21  severity of a person's asthma especially with no information as to how that level was
22  determined," and when considering that "medical records from July 28, 2020 show that he was
23  using the inhaler more than the prescribed amount because of the severity of his asthma."  (*Id.* at
24  3.)

25  Here, the court finds that the absence of a formal diagnosis of moderate to severe asthma
26  does not necessarily mean that defendant Hernandez is not at an increased risk of suffering severe
27  illness if he were to contract COVID-19 as a result of his asthma condition, the symptoms of
28  which have been documented over the last several months and for which he has been prescribed

two types of inhalers by prison medical staff. However, the court need not conclusively determine whether defendant's health conditions place him at an increased risk of suffering severe illness from COVID-19, because even if they do, defendant has not shown, or even argued for that matter, that FCI Lompoc is unable to monitor and adequately treat his medical conditions. *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . .. There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."). In fact, the medical records filed with the court under seal suggest that FCI Lompoc is providing adequate medical care to defendant because he is being prescribed and provided the medications necessary to self-care for his health conditions. Although the court recognizes that defendant may have had some difficulties in obtaining refills of his inhalers in late August 2020, he has not updated the court, in his reply brief or otherwise, regarding whether his lack of access to inhalers continues to be an issue. Without more information in this regard, the court is not persuaded that a delay in defendant's ability to obtain inhalers necessarily rises to the level of an extraordinary and compelling reason supporting compassionate release. *See, e.g., United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, No. 06-cr-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills of defendant's inhaler might impact his ability to self-manage his mild asthma).

/////

Moreover, defendant Hernandez does not persuasively argue that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 and that his ability to provide self-care at FCI Lompoc is substantially diminished. *See United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) ("[T]he presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). For example, defendant Hernandez does not argue that he lacks access to protective gear and cleaning and sanitizing supplies, or that he is unable to social distance, or that he is otherwise unable to provide self-care at FCI Lompoc. Rather, in his pending motion, defendant merely summarizes a few of the findings of the report conducted by the Department of Justice, Office of The Inspector General (OIG) following the OIG's remote inspection of Federal Correctional Complex Lompoc ("FCC Lompoc") between April 23 and May 1, 2020, without any argument or assertion regarding the current conditions at FCI Lompoc where he is incarcerated. (Doc. No. 42 at 2.)[6] Defendant also cites to the class action civil lawsuit filed on May 16, 2020, regarding FCC Lompoc's response to COVID-19, *Torres v. Milusnic*, No. 20-cv-04450-CBM-

---

[6] While defendant Hernandez does not describe specific conditions at FCI Lompoc, the court recognizes that another judge of this court has reviewed the OIG's report and observed as follows:

> [a] recent Inspector General's report on the situation at the facility states, "despite FCC Lompoc's efforts, its infrastructure may have limited its ability to implement the CDC's social distancing guidelines. FCC Lompoc has open bar cells (as opposed to solid doors), and inmates congregate in common areas, which can facilitate rapid community spread." Department of Justice Office of the Inspector General, *Pandemic Response Report July 2020, Remote Inspection of Federal Correctional Complex Lompoc*, Report 20-086 (July 23, 2020) (accessed Sept. 2, 2020). The Inspector General's report states "unless the BOP promptly takes longer-term actions to address [staffing shortfalls], Lompoc will again face a shortage of medical and correctional staff when [temporary duty] staff return to their home institutions." *Id.* at 2–3.

*United States v. Schweder*, No. 2:11-cr-00449-KJM, 2020 WL 5257598, at *6 (E.D. Cal. Sept. 3, 2020). As noted above, however, in this case there are no competing accounts of current conditions at FCI Lompoc.

11

PVC (C.D. Cal.), in which the plaintiffs allege that "the BOP is mismanaging one of the worst public health catastrophes related to COVID-19 anywhere in the country – and the epicenter of the outbreak is Lompoc, where more than 1,000 incarcerated persons have tested positive for COVID-19." (Doc. No. 42 at 2.) Though, again, defendant has not provided any allegations regarding the conditions that he is currently facing in FCI Lompoc.

The government concedes that FCC Lompoc "had a significant coronavirus outbreak," but contends that the BOP has since taken several steps in response to COVID-19, including "temperature testing and symptom screening daily in every housing unit" in FCI Lompoc. (Doc. No. 52 at 5.) Certainly, the court also recognizes that FCI Lompoc initially failed to control the outbreak of COVID-19 at that institution, as the majority of its inmates tested positive for the virus. *See United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). That situation is obviously an extremely serious one. However, despite the earlier outbreak, defendant has fortunately managed to not be infected with the virus. Defendant's medical records indicate that he was tested for COVID-19 twice, on June 25, 2020 and July 14, 2020, and tested negative both times. (Doc. No. 55 at 66, 68.) Moreover, when the government filed its opposition to the pending motion on September 17, 2020, the government noted that "3 inmates and 4 staff members have confirmed positive for COVID-19 in FCC Lompoc." (Doc. No. 52 at 5.) Overall, the infection rate at FCI Lompoc has dropped considerably in recent months. Indeed, as of September 28, 2020, the BOP now reports that zero inmates and only 3 staff members are confirmed as having active COVID-19 cases at FCI Lompoc. *See* https://www.bop.gov/coronavirus/ (last reviewed Sept. 28, 2020).[7]

Accordingly, the court concludes that defendant Hernandez has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A). Therefore, his motion will be denied.

/////

---

[7] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

**C.      Consistency With the § 3553(a) Factors**

Finally, even if defendant Hernandez's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 2020 WL 2572525, at *11.

Defendant contends that because he has not had any disciplinary problems during these past six and a half months of incarceration, his conduct shows that the purposes of punishment have been met and he does not pose a threat to public safety. (Doc. No. 42 at 8.) According to defendant, a reduction of his "in-custody sentence to time served, the equivalent of more than 66% of his in-custody sentence, is 'sufficient, but not greater than necessary,' to serve the purposes of sentencing under § 3553(a)." (*Id.* at 2–3.)

The government counters that a reduction of defendant's sentence would not be consistent with the § 3553(a) sentencing factors, which factors the court considered just eight months ago when it imposed sentence. (Doc. No. 52 at 9–10.) The government emphasizes the court's observations at defendant's sentencing, notably that his criminal conduct involved a "serious, serious breach of the public trust" and was "really pretty outrageous actually," and the court's conclusion that despite the mitigating circumstances, defendant "has to be severely punished[] [b]ecause this was a very bad offense. And very calculated. And very lengthy." (Doc. No. 52 at

/////

/////

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

9–10) (citing Doc. No. 51 at 11.)[9]

As noted above, defendant Hernandez is currently serving an 18-month "split" sentence (i.e. 9 months in custody and 9 months on home confinement) after pleading guilty to wire fraud in violation of 18 U.S.C. § 1343. (Doc. No. 36.) Defendant's criminal offense was a very serious one, in which he stole a large amount of money over an extended period of time from SSA and abused his position of trust with that agency in committing his offense. At sentencing, defendant was ordered to pay restitution to the victim of his offense totaling $447,073.00 – the amount he stole from SSA. (*Id.* at 8.) With his acceptance of responsibility acknowledged, the presentence report in his case determined that defendant's total offense level was 20, that his criminal history category was I, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 33 and 41 months. (Doc. No. 27 at 19.) However, the presentence

---

[9] The government also argues that this court lacks the authority to grant the specific relief defendant seeks in the pending motion, which the government characterizes as a request "that the Court order his release from his sentence and transform the sentence into time served with the remainder on home confinement." (Doc. No. 52 at 10.) This is because the BOP has exclusive authority to designate the place of a prisoner's imprisonment. (*Id.*) (citing cases). Defendant counters that "[t]he Court is not without power to modify the sentence" because "[i]f that were true than the Court would not have been able to pronounce its original sentence of 9 months in custody and 9 months on electronic home confinement." (Doc. No. 56 at 2.) The court recognizes that the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may always, however, impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5 n.6, *7. Here, defendant's original sentence included a nine-month term of home confinement. Nonetheless, the court has the authority to grant defendant's request by imposing an additional condition on his supervised release term. The question is, should the court reduce the sentence that was imposed just eight months ago in order to do so? The court has determined that a reduced sentence, even with an additional condition of supervised release requiring a lengthier period of home confinement, is not called for here.

1  report recommended a slight downward variance, of a sentence of 27 months imprisonment
2  followed by a three-year term of supervised release, because of defendant's paraplegia, family
3  responsibilities, and the fact that this offense was his first felony conviction. (*Id.* at 3, 19.) After
4  considering the § 3553(a) factors, including those noted in the presentence report, the undersigned
5  varied downward further to the equivalent of an adjusted offense level of 13 to facilitate the
6  imposition of a split sentence, and sentenced defendant to an 18-month term, "9 months to be
7  served in custody and 9 months to be served on electronically monitored home confinement."
8  (Doc. No. 36 at 2.) Thus, the sentence imposed by the court was nearly half of the low end of the
9  applicable guideline range as calculated in the presentence report, and was split between
10 imprisonment and home confinement. In short, defendant Hernandez received a lenient sentence
11 given the seriousness of this case.

12       The court recognizes that granting the pending motion would not be inconsistent with
13 some of the other § 3553(a) sentencing factors. Notably, defendant's lack of criminal history, and
14 the fact that in the court's view, defendant does not likely pose a danger to the safety of the
15 community, particularly because he would remain on home confinement as initially sentenced,
16 followed by a 36-month term of supervised release. Indeed, granting the compassionate relief
17 defendant now requests would not shorten his overall 18-month sentence; but it would reduce the
18 length of his term of imprisonment to approximately 6 and a half months. In the court's view, a 6
19 and a half month term of imprisonment simply would not adequately reflect the seriousness of
20 defendant's offense, promote respect for the law, provide just punishment, or afford adequate
21 deterrence to criminal conduct. *See United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020
22 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota,* No. 1:15-cr-00264-LHK-
23 1, 2020 WL 2733993 at *5 (N.D. Cal. May 26, 2020); 18 U.S.C. § 3553(a). Thus, on balance, the
24 court finds that granting defendant's motion would not be consistent with the § 3553(a)
25 sentencing factors.

26                                             **CONCLUSION**

27       Because defendant Hernandez has failed to demonstrate that "extraordinary and
28 compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)

or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 42) is denied.

IT IS SO ORDERED.

Dated: __**September 29, 2020**__   _____
UNITED STATES DISTRICT JUDGE